UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CHRISTA NOEL WHITE                    CIVIL ACTION NO. 6:15-cv-01492

VERSUS                                JUDGE HANNA

U.S. COMMISSIONER, SOCIAL             BY CONSENT OF THE PARTIES
SECURITY ADMINISTRATION

## MEMORANDUM  RULING

Before the Court is an appeal of the Commissioner's finding of non-disability.

In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the

parties consented to have this matter resolved by the undersigned Magistrate Judge.

(Rec. Doc. 15).  Considering the administrative record, the briefs of the parties, and

the applicable law, it is ordered that the Commissioner's decision be reversed and

remanded for further administrative action.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Christa Noel White, fully exhausted her administrative remedies

prior to filing this action in federal court.  The claimant filed an application for

disability insurance benefits ("DIB"), alleging disability beginning on June 30, 2011[1]

due to fibromyalgia, psoriatic arthritis, degenerative disc disease, hypoglycemia, and

---

[1]     Rec. Doc. 7-1 at 192, 95.

depression.[2]  Her application was denied.[3]  She requested a hearing, which was held on July 9, 2013 before Administrative Law Judge Kim McClain-Leazure.[4]  The ALJ issued a decision on October 17, 2013,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act from June 30, 2011 through the date of the decision.  The claimant requested review of the decision, but the Appeals Council concluded that there was no basis for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## FACTUAL BACKGROUND

The claimant was born on December 23, 1972.[7]  At the time of the ALJ's decision, she was forty years old.  She has a degree in business management[8] and past

---

[2]        Rec. Doc. 7-1 at 95.

[3]        Rec. Doc. 7-1 at 106.

[4]        The hearing transcript is found at Rec. Doc. 7-1 at 38-94.

[5]        Rec. Doc. 7-1 at 17-31.

[6]        Rec. Doc. 7-1 at 5.

[7]        Rec. Doc. 7-1 at 192.

[8]        Rec. Doc. 7-1 at 71.

relevant work experience as a bookkeeper, paralegal, and retail manager.[9] She alleges that she has been disabled since June 30, 2011[10] due to fibromyalgia, psoriatic arthritis, degenerative disc disease, hypoglycemia, and depression.[11]

Ms. White began treating with Dr. Laura K. Hollensworth at the Daphne Family Practice in Daphne, Alabama on May 11, 2011.[12] She was diagnosed with hyperlipidemia, psoriasis, hip joint pain, scoliosis, cervicalgia, rotator cuff tear, lumbago, degenerative disc disease, menopausal hot flashes, weight gain, sleep disturbance, and diarrhea. Several diagnostic tests were ordered. On that same date, Dr. David L. Fore of the Thomas Medical Center in Daphne, Alabama, took a series of lumbar, cervical, and hip x-rays.[13] The cervical x-rays showed degenerative changes while the other x-rays were normal.

On May 16, 2011,[14] Ms. White complained to Dr. Hollensworth of numbness and tingling in her left arm and hand as well as swelling and a rash on her arm and face. The doctor's assessment included weight gain, degenerative disc disease,

---

[9]      Rec. Doc. 7-1 at 41, 43-45, 223, 235.

[10]     Rec. Doc. 7-1 at 95, 192.

[11]     Rec. Doc. 7-1 at 95.

[12]     Rec. Doc. 7-1 at 318-324, 297-305.

[13]     Rec. Doc. 7-1 at 277-279.

[14]     Rec. Doc. 7-1 at 314-317.

psoriasis, cervical radiculopathy, hyperglyceridemia, and peripheral edema.  MRIs of the cervical and lumbar spine were ordered.

On June 1, 2011,[15] Ms. White saw Dr. William F. Sullivan, a rheumatologist. He noted that she had a long history of chronic pain.  His examination showed that she had a good range of movement in her shoulders, elbows, wrists, hips, knees, and ankles, no significant synovitis, no edema, but tenderness in the trapezius, lumbar paraspinous, and trochanteric bursa region.  He diagnosed her with anxiety, arthritis, depression, headache, acute upper respiratory infection, and urinary tract infection. He prescribed an array of medications.

An MRI of the cervical spine, obtained on June 2, 2011, showed degenerative disc disease at C5-6 and C6-7 with moderate central canal stenosis at C5-6.[16]  A lumbar MRI, obtained on the same date, showed minimal degenerative changes.[17]

On June 9, 2011,[18] Ms. White saw Dr. Patricia A. Boltz.  Her chief complaint was chronic neck pain, right shoulder pain, and bilateral arm pain.  A neurologic examination showed that Ms. White's gait and station were mildly antalgic, she had

---

[15]     Rec. Doc. 7-1 at 365-367.

[16]     Rec. Doc. 7-1 at 275.

[17]     Rec. Doc. 7-1 at 276.

[18]     Rec. Doc. 7-1 at 284-286.

difficulty getting up out of a chair, and she had mild decreased grip strength in her right hand.[19]  On June 23, 2011,[20] Dr. Boltz administered a cervical epidural steroid injection at C6-7.

The claimant saw Dr. Hollensworth again on June 27, 2011,[21] complaining of right leg numbness and tingling, bilateral neck pain, and lower back pain.  It was noted that her hands were swelling, and she had moderate pain in her hands and hip.

Ms. White saw Dr. Sullivan again on June 30, 2011.[22]  His assessment included generalized osteoarthrosis involving multiple sites, fibromyalgia, other malaise and fatigue, and psoriatic arthropathy.  He prescribed Methotrexate for her psoriatic arthritis.

The claimant saw Dr. Hollensworth again on July 8, 2011.[23]  She was experiencing a cough after having started taking Methotrexate.  Moderate pain in her hands was again noted.

---

[19]     Ms. White is right handed.  Rec. Doc. 7-1 at 55.

[20]     Rec. Doc. 7-1 at 282.

[21]     Rec. Doc. 7-1 at 310-312.

[22]     Rec. Doc. 7-1 at 410-413.

[23]     Rec. Doc. 7-1 at 307-309.

Ms. White underwent an additional cervical epidural steroid injection at C6-7 on July 14, 2011.[24]

On August 31, 2011,[25] Ms. White again saw Dr. Sullivan.  She described increasing severe right hip pain that interfered with walking.  Trochanteric bursitis was added to her diagnoses.  Dr. Sullivan again noted that she had a good range of movement in her shoulders, elbows, wrists, hips, knees, and ankles, no significant synovitis, no edema, but tenderness in the trapezius, lumbar paraspinous, and trochanteric bursa region.

On September 13, 2011, Ms. White was seen in the emergency department of Thomas Hospital,[26] complaining of a grinding in her posterior neck along with burning pain in the same location.  A CT scan of her cervical spine showed posterior disc spurs at C5-6 and C6-7.  She was diagnosed with degenerative disc disease, given pain medication, prescribed Flexeril, and discharged with instructions to see Dr. Hollensworth.

---

[24]     Rec. Doc. 7-1 at 281.

[25]     Rec. Doc. 7-1 at 368-376.

[26]     Rec. Doc. 7-1 at 288-294.

Ms. White saw Dr. Sullivan again on October 13, 2011.[27]  He noted swelling and synovitis in her wrists and hands as well as swelling in her ankles and joints.  He diagnosed psoriatic arthropathy, psoriasis, neck pain, and back pain.

Ms. White returned to Dr. Sullivan on November 2, 2011.[28]  Her primary complaint was an acute skin infection.  Swelling and synovitis in her wrists and swelling in her hands was again noted.

Ms. White was again seen by Dr. Sullivan on December 20, 2011.[29]  Her skin condition had improved.  Swelling and synovitis in her wrists was again noted as was synovitis in her elbows, knees, and ankles, and swelling in her hands, swelling of her joints, and joint pain.

On January 19, 2012, Dr. Sullivan completed a "Physical Capacities Evaluation."[30]  In his opinion, Ms. White was capable of sitting for two hours per work day, walking for one hour, and standing for less than one hour.  Further, he noted that she can occasionally lift or carry six to ten pounds, but can never lift or carry more than that.  He stated that she cannot use her hands for repetitive action

---

[27]     Rec. Doc. 7-1 at 362-364.

[28]     Rec. Doc. 7-1 at 359-361.

[29]     Rec. Doc. 7-1 at 355-358.

[30]     Rec. Doc. 7-1 at 390-392.

such as simple grasping, pushing and pulling, or fine manipulation.  He also noted that she cannot use her feet for repetitive movements such as pushing and pulling.

On March 14, 2012, Ms. White was examined by psychologist Kendra LaConsay[31] at the request of the Disability Determination Service.  Although Dr. LaConsay found Ms. White to be independent in her activities of daily living, she diagnosed Major Depressive Disorder, Recurrent, Moderate and Anxiety Disorder, NOS.  She stated that "[i]t is questionable as to whether Ms. White will be able to return to work within the next 6 to 12 months.  This is highly dependant upon the stabilization of her medical and psychiatric conditions."[32]

Ms. White again saw Dr. Sullivan on May 2, 2012.[33]  Her skin condition had improved but her arthritis had worsened significantly.  It was again noted that she had swelling and synovitis in her wrists, swelling of her hands, ankles, and joints as well as neck pain, back pain, and joint pain.

On October 31, 2012, Ms. White began treating with Dr. Herbert Kinsey.  She saw him again on November 27, 2012, December 11, 2012, January 8, 2013, January

---

[31]    Rec. Doc. 7-1 at 382-386.

[32]    Rec. Doc. 7-1 at 385.

[33]    Rec. Doc. 7-1 at 414-416.

22, 2013, February 5, 2013, February 20, 2013, and March 5, 2013.[34]  Among her many complaints to Dr. Kinsey were pain in multiple joints and swollen fingers.  Dr. Kinsey ordered an ANA test, which was negative.[35]  An ANA test detects antinuclear antibodies (ANA) in the blood, which are usually present in the event of an autoimmune reaction, and is used to help diagnose autoimmune diseases such as lupus, rheumatoid arthritis, or scleroderma.[36]

On March 12, 2013, Ms. White saw Nurse Practitioner Selisa Helvacioglu in Dr. Sullivan's office.[37]  The treatment note indicates that Ms. White had been treating with Dr. Kinsey through his free clinic, that she had stopped taking Enbrel due to increasing migraine-type headaches and a butterfly rash on her face, that the headaches were responsive to Imitrex, that stopping the Enbrel did not improve the headaches but resulted in increased arthritis activity, and that Humira was to be avoided because it caused an exacerbation of skin problems.  The plan was to restart the Enbrel.  Swelling and synovitis in the wrists was noted as well as swelling of the

---

[34]     Rec. Doc. 7-1 at 397-409.

[35]     Rec. Doc. 7-1 at 404-407.

[36]     Mayo Clinic, http://www.mayoclinic.org/tests-procedures/ana-test/basics/definition/prc-20014566 (last visited Apr. 21, 2016).

[37]     Rec. Doc. 7-1 at 417-419.

MTP joints (where the foot joins the toes), swelling of the hands, neck pain, back pain, and joint pain.

Dr. Sullivan completed a second "Physical Capacities Evaluation" on April 18, 2013.[38]  He again opined that Ms. White was capable of sitting for two hours per work day, walking for one hour, and standing for less than one hour.  Further, he noted that she can occasionally lift or carry six to ten pounds, but can never lift or carry more than that.  He stated that she cannot use her hands for repetitive action such as simple grasping, pushing and pulling, or fine manipulation. or use her feet for repetitive movements such as pushing and pulling.

Between February and April 2013, the claimant attended physical therapy at Bishop Physical Therapy, LLC in Daphne, Alabama.[39]

Ms. White was seen at University Hospital and Clinic in Lafayette, Louisiana, on February 25, 2014.[40]  It was noted that she had recently moved from Alabama, needed to get established with a primary care physician, and needed to refill her prescriptions.  She complained of pain and requested medication management.  She was diagnosed with psoriasis, psoriatic arthritis, right shoulder pain secondary to an

---

[38]     Rec. Doc. 7-1 at 433-435.

[39]     Rec. Doc. 7-1 at 408, 420-432.

[40]     Rec. Doc. 7-1 at 435-436.

injury, left foot pain described as likely to be a calcaneal spur or plantar fasciitis, fibromyalgia, depression, and neck pain.  Various medications were prescribed, including Enbrel and Methotrexate, and diagnostic testing was performed.

At the time of the hearing, the claimant was taking twelve prescription medications:  Mobic, Methotrexate, Folic Acid, Cymbalta, Flexeril, Percocet, Tramadol, Enbrel, Neurontin, Soma, Thoradone, and Celexa.[41]

At the hearing, Ms. White identified Dr. Hollensworth as her primary care physician and Dr. Sullivan as her treating rheumatologist.[42]  She testified that she has arthritis in her hands, that her hands swell "pretty bad," that holding a computer mouse causes her hand to cramp, and that she can no longer type.  She also stated that she has trouble lifting things.  To lift a gallon of milk, she has to use both hands.  She also stated that she cannot lift "over and over again" because such activity creates "an issue with my shoulder into my neck."  She described pain in both arms and hands, numbness in her arms and hands, and swelling in her hands that prevents her from making a fist.  She explained that the swelling "is a constant condition" and gets so severe that "I won't have any wrinkles left in my fingers."

---

[41]     Rec. Doc. 7-1 at 264-266.

[42]     Rec. Doc. 7-1 at 52.

The claimant now challenges the ALJ's ruling, particularly with regard to the finding that Ms. White retains the functional capacity to use her hands in performing sedentary work that requires repetitive reaching, pushing, pulling, and fine manipulation.

### ANALYSIS

**A.    STANDARD OF REVIEW**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[43]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[45]

---

[43]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[44]    *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[45]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

-12-

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[46]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[47]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[48]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[49]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[46]      42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[47]      *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[48]      *Martinez v. Chater*, 64 F.3d at 174.

[49]      *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

both insured and disabled, regardless of indigence.[50]   The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[51]   A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[52]

## C.   Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found

---

[50]       See 42 U.S.C. § 423(a).

[51]       42 U.S.C. § 1382c(a)(3)(A).

[52]       42 U.S.C. § 1382c(a)(3)(B).

-14-

disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled will be made at step four. At step five, if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if the claimant can perform any other work.[53]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[54] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[55]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[56]

---

[53]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[54]     20 C.F.R. § 404.1520(a)(4).

[55]     20 C.F.R. § 404.1545(a)(1).

[56]     20 C.F.R. § 404.1520(e).

-15-

The claimant bears the burden of proof on the first four steps.[57]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[58]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[59]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[60]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[61]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since June 30, 2011, the claimant's alleged onset date.[62]  This finding is supported by evidence in the record.

---

[57]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[58]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[59]   *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[60]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[61]   *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[62]   Rec. Doc. 7-1 at 19.

-16-

At step two, the ALJ found that the claimant has the following severe impairments:  disorders of the back, obesity, fibromyalgia, psoriatic arthritis, and affective disorders.[63]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[64]  The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform work at the sedentary level – but with a long list of limitations, including a need to stand and stretch for one to two minutes after sitting for thirty minutes, doing no overhead reaching with either arm or doing any pushing or pulling with her hands or arms, never climbing ladders or scaffolds, never working around unprotected heights or dangerous equipment, never operating a commercial vehicle, never being exposed to temperature extremes, witness, or vibration, and only performing positions requiring specific vocational preparation levels no greater than three.[65]  The claimant challenges this finding.

---

[63]     Rec. Doc. 7-1 at 19.

[64]     Rec. Doc. 7-1 at 20.

[65]     Rec. Doc. 7-1 at 21.

At step four, the ALJ found that the claimant is not capable of performing her past relevant work.[66]  This finding is supported by evidence in the record.

At step five, the ALJ found that the claimant was not disabled from June 30, 2011 through October 17, 2013 (the date of the decision) because there are jobs in the national economy that she can perform.[67]  The claimant challenges this finding.

### E.   THE ALLEGATIONS OF ERROR

The claimant contends that the ALJ erred by improperly applying controlling law in evaluating Dr. Sullivan's medical opinions and by reaching conclusions concerning the claimant's limitations that are not supported by substantial evidence.

### F.   THE ALJ ERRED IN WEIGHING DR. SULLIVAN'S OPINIONS

The ALJ has sole responsibility for determining the claimant's disability status.[68]  Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[69] In fact, when a treating physician's opinion regarding the nature and severity of an

---

[66]     Rec. Doc. 7-1 at 29.

[67]     Rec. Doc. 7-1 at 31.

[68]     *Newton v. Apfel*, 209 F.3d at 455.

[69]     *Pineda v. Astrue*, 289 Fed. App'x 710, 712-13 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

-18-

impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[70]   As the Fifth Circuit stated, "[t]he expert opinion[ ] of a treating physician as to the existence of a disability [is] binding on the fact-finder unless contradicted by substantial evidence to the contrary."[71]

The Social Security regulations and rulings explain how medical opinions are to be weighed.[72]   Generally, the ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record. If an ALJ declines to give controlling weight to a treating doctor's opinion, she may give the opinion little or no weight – but only after showing good cause for doing so.[73]   Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[74]

---

[70]     20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[71]     *Loza v. Apfel*, 219 F.3d at 393 (quoting *Bastien v. Califano*, 572 F.2d 908, 912 (2nd Cir. 1978)).

[72]     20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p.

[73]     *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-44 (5th Cir. 2009).

[74]     *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-444.

In this case, the ALJ gave "little weight" to Dr. Sullivan's opinions concerning the claimant's functional capabilities,[75] gave "partial weight" to Dr. Sullivan's opinions concerning the claimant's ability to perform repetitive movements with her hands,[76] and concluded that Ms White is able to perform a modified range of sedentary work that is not consistent with Dr. Sullivan's opinions.  In particular, Dr. Sullivan opined in January 2012 and again in April 2013 that Ms. White cannot use her hands for repetitive actions such as simple grasping, pushing and pulling arm controls, and fine manipulation, and he also opined that she cannot use her feet for repetitive movements such as pushing and pulling leg controls.  At the hearing, a vocational expert testified that the jobs he suggested for the claimant all require frequent manual dexterity and stated that if a person was unable to engage in simple grasping, pushing and pulling of arm controls, or fine manipulation, she would be unable perform these jobs.[77]  The ALJ found that Ms. White is able to reach frequently – other than overhead – handle, finger, and feel but is not capable of doing any pushing or pulling with her hands and arms.[78]  Thus, she accepted part – but not

---

[75]     Rec. Doc. 7-1 at 26.

[76]     Rec. Doc. 7-1 at 27.

[77]     Rec. Doc. 7-1 at 75.

[78]     Rec. Doc. 7-1 at 21.

all – of Dr. Sullivan's assessment of the functional capabilities of Ms. White's hands and arms.  It is not clear from the record whether the ALJ's acknowledgment that Ms. White is incapable of pushing or pulling arm controls disqualifies her from doing the jobs suggested by the vocational expert, especially since he testified that "all jobs in our economy require some repetitive action."[79]  Still, the ALJ found that Ms. White is capable of performing the jobs identified by the vocational expert.

The ALJ discounted Dr. Sullivan's opinions on the basis that they are "not supported by the objective evidence and [are] inconsistent with the treatment notes . . . indicating the claimant has good range of motion in her wrists, elbows and hands, and the claimant's own statements that she is able to go shopping, drive her daughter to her practices, and prepare meals."[80]  Although the ALJ acknowledged the evidence in the record establishing swelling in Ms. White's hands and wrists and numbness and tingling in her hands and arms, she downplayed the claimant's pain complaints, failed to appreciate the significance of the consistent mention of synovitis in the medical records, and apparently decided that the evidence concerning the claimant's range of motion outweighed the other medical evidence.

---

[79]     Rec. Doc. 7-1 at 90.

[80]     Rec. Doc. 7-1 at 26-27.

Synovitis is "inflammation of a synovial membrane usually with pain and swelling of the joint."[81]  Frequent findings of synovitis are found in the record.  Such findings are consistent with the claimant's psoriatic arthritis diagnosis.  Rather than focusing on the frequent and consistent treatment notes concerning pain, swelling, and synovitis, however, the ALJ found it persuasive that the records fail to expressly state that the claimant experienced a restriction of movement of her hands.  The ALJ also stated that the claimant never complained to Dr. Kinsey about her hands.  That conclusion is not supported by the record since "fingers swelled up" is one of the items listed in the treatment note of March 5, 2013.[82]  Thus, the ALJ's conclusion that Dr. Sullivan's opinions concerning the claimant's hands are not supported by objective evidence lacks a sound evidentiary basis.

The ALJ also focused on the claimant's allegedly being non-compliant with her medications, stating "[s]welling of the hands is a symptom and here, it is more likely than not, related at least in a small part, to not taking medication as prescribed each and every day."[83]  Evidence in the record documents that the claimant was required to stop taking her medications before doing blood work for certain diagnostic testing

[81]     Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/synovitis (last visited Apr. 22, 2016).

[82]     Rec. Doc. 7-1 at 409.

[83]     Rec. Doc. 7-1 at 28.

-22-

and while taking antibiotics.[84]  She also stopped taking certain medications in an effort to control side effects.[85]  There is no medical opinion evidence in the record linking an increase in her hand swelling with a failure to take all prescribed medications exactly as prescribed or suggesting that her medication should not ever have been stopped.  Instead, the ALJ's conclusion that the swelling of the claimant's hands is causally linked to her failure to take all of her medication every day appears to be the result of the ALJ substituting her own opinion for that of the medical professionals.

The ALJ's conclusions were also influenced by the fact that the claimant had a negative ANA test.  There is no evidence in the record explaining the purpose of this test or the significance of a negative result.  Finally, the ALJ found that the claimant had only occasional hand swelling, and she assumed that this swelling resulted in mild restriction of movement.[86]  Again, these findings are the result of the ALJ interpreting the medical evidence on her own rather than adopting the findings of a physician.

---

[84]     Rec. Doc. 7-1 at 67.

[85]     Rec. Doc. 7-1 at 417-447.

[86]     Rec. Doc. 7-1 at 27.

-23-

An ALJ "must be careful not to succumb to the temptation to play doctor" or make their own independent medical assessments.[87]  In this case, however, the ALJ concluded, on her own, that range of motion tests outweigh evidence concerning the existence of synovitis, pain complaints, and swelling when determining the functional capacity of a person's hands.  She also concluded, on her own, that the claimant's swollen hands resulted from a failure to take certain medication exactly as prescribed rather than from an ongoing disease process.  She concluded, on her own, that the claimant's hands are swollen only occasionally and that the swelling results in only a mild restriction of movement.  The ALJ's tendency to play doctor was also evident at the hearing, when she advised the claimant that soaking in epsom salt would pull the swelling out[88] and suggested that the claimant should look into taking B vitamins to combat the Methotrexate and Enbrel causing her hair to fall out.[89]

"Although the ALJ may weigh competing medical opinions about. . . limitations and use objective medical evidence to support its determination that one opinion is better founded than another, neither the ALJ nor the court is free to

---

[87]    *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

[88]    Rec. Doc. 7-1 at 64.

[89]    Rec. Doc. 7-1 at 50.

-24-

substitute its own opinion."[90]   Thus, the ALJ erred when she substituted her own opinion for that of the claimant's physicians.

The ALJ also erred when she gave Dr. Sullivan's opinions only "little" or "partial" weight.  Dr. Sullivan is a specialist in the field of rheumatology, and he is the claimant's treating physician.  As such, his opinions are entitled to deference. That is particularly so in this case, in which the record contains no analysis of the functional capacity of the claimant's hands and arms by any doctor other than Dr. Sullivan.  There is no medical opinion in the record that disputes or refutes his evaluation.  There is, however, confirmation of the diagnosis of psoriatic arthritis and confirmation of the symptoms of pain, numbness, tingling, swelling, and loss of grip strength.  Furthermore, as noted above, Dr. Sullivan's evaluation is based on the objective evidence he gathered in his eight examinations of the claimant over a two year period and set forth in his treatment notes.  There is no evidence in the record disputing his evaluation.  Accordingly, the ALJ's assignment of "little" or "partial" weight to his opinions does not result from a weighing of his opinions against those of another doctor and is not supported by substantial evidence in the record.  For

---

[90]      *Fabre v. Astrue*, No. 13-00076-BAJ-RLB, 2014 WL 4386424, at *6, n. 6 (M.D. La. Sept. 4, 2014).

those reasons, this matter will be remanded for a proper weighing of medical opinions and a reevaluation of the claimant's application for benefits.

<u>CONCLUSION</u>

This Court concludes that the ALJ's finding regarding the claimant's residual functional capacity and the ALJ's finding that the claimant is not disabled were reached by applying an inappropriate legal standard and are not based on substantial evidence in the record.  Accordingly,

**IT IS ORDERED** that this matter is REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings with instructions to properly weigh Dr. Sullivan's opinions, to reevaluate the claimant's residual functional capacity, and to reevaluate whether there are jobs in the economy that the claimant can perform.

Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[91]

---

[91]  See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Signed in Lafayette, Louisiana, this 22nd day of April 2016.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE